OPINION OF THE COURT
Stanley Harwood, J.
This motion by defendant to modify a stipulation of settlement and cross motion by plaintiff for counsel fees are respectfully referred for an evidentiary hearing to Special Term, Part V, for the reasons set out below.
This action for separation was commenced in or about November, 1980, after the effective date of the “equitable distribution” law. The parties appeared in court on January 19,1982 at which time a stipulation of settlement was spread on the record. Although no copy of the stipulation was submitted with the moving or opposing papers, a transcript of the proceeding is contained in the court file. At trial, defendant withdrew his answer to the complaint, which plaintiff agreed to amend to include a prayer for divorce. Plaintiff, while testifying, indicated that she had no desire for a divorce, but agreed to request amendment of her complaint if defendant supported her for the rest of her life. Defendant agreed to pay plaintiff the sum of $500 per month until her death or remarriage commencing as of the date of entry of the judgment of divorce. Until that time defendant agreed to continue compliance with a temporary maintenance order of this court (Wager, J.) directing defendant to pay plaintiff $50 per week plus the carrying charges and the fuel and utility bills on the marital resi *512 dence. He also consented to plaintiff’s exclusive occupancy, and to deferral of the signing of the judgment until March 31, 1982 so that plaintiff, who needed an operation, would be covered by defendant’s medical insurance. A written addendum to the oral stipulation provided that its terms shall survive and not merge in the judgment of divorce. At the time of the making of the agreement, defendant was earning $1,344 (net) per month but on March 5, 1982, defendant’s employer instituted a “wage-loan plan” which effectively reduced defendant’s monthly net income to $1,187. Defendant immediately sought and obtained a stay of the signing of the judgment of divorce because of the instant application to modify the stipulation by reducing maintenance to $300 per month. Defendant subsequently advised the court by affidavit, without contradiction or objection by plaintiff, that his employer had filed for bankruptcy and his employment ended May 3, 1982. He is apparently eligible for and expects to begin receiving unemployment insurance benefits of $145 per week. Plaintiff’s sole opposition to the motion is her contention that the court is without power to modify the stipulation, and that defendant must await the signing of the judgment and then seek its modification. She requests a counsel fee for defending this “improper” proceeding, alleging generally that she “has no money”, and that defendant has a “second source of income other than his job”.
It is true that prior to the enactment of the equitable distribution law (L 1980, ch 281, § 9, éff July 19, 1980) the court, while having statutory power to modify an award of alimony contained in a judgment of divorce (see Domestic Relations Law, § 236, part A; Kreuger v Kreuger, 86 Misc 2d 857), was powerless to effect any change in an underlying support agreement which survived that judgment, unless the agreement was impeached. (Cf. Bowmer v Bowmer, 50 NY2d 288; see, also, Goldman v Goldman, 282 NY 296; Kreuger v Kreuger, supra.) No ground for impeachment such as fraud or duress (see Vranick v Vranick, 41 NY2d 663) is alleged here. Instead defendant seeks modification of the stipulation because of his changed financial circumstance. If this action were governed by part A of section 236 of the Domestic Relations Law, defendant’s *513 application would as a matter of law have been denied (cf. ibid.) for only the judgment, not the agreement itself, would be modifiable, and no judgment directing defendant to pay $500 per month is now in effect. Section 236 (part B, subd 9, par b) of the Domestic Relations Law, however, provides in pertinent part that: “[wjhere, after the effective date of this part, a separation agreement remains in force no modification of a prior order or decree incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the decree or order as modified shall supersede the terms of the prior agreement and decree for such period of time and under such circumstances as the court shall determine.” (Emphasis added.) In addition, section 236 (part B, subd 3) of the Domestic Relations Law provides in pertinent part that agreements of the parties with respect to amount and duration of maintenance “made before or during the marriage, shall be valid and enforceable in a matrimonial action * * * provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment” (emphasis added). The court’s statutory powers are thus expanded to include the ability to “set aside or suspend” (see Black’s Law Dictionary [4th ed, 1968], p 1607) the maintenance provisions of a separation agreement (see 11C Zett, Kaufman & Kraut, NY Civ Prac, ch 73); and those new powers “mark a significant departure from long-established matrimonial practice, which had recognized the independent viability of all terms of a surviving separation agreement, despite court modifications of directives, incorporated from such agreements” (11C Zett, Kaufman & Kraut, op. cit., at p 73-12). The standard for supersedure of the agreement is “extreme hardship” (Domestic Relations Law, § 236, part B, subd 9, par b) when modification of a prior directive incorporating the terms of the agreement is sought, and it appears that an agreement will not be enforced if at the time of judgment its terms are “unconscionable”. (Domestic Relations Law, § 236, part B, subd 3; see McKinney’s Cons Laws of NY, Book 1, Statutes, §76.)
*514 Although subdivision 3 and paragraph b of subdivision 9 of part B of section 236 of the Domestic Relations Law refer explicitly or implicitly to “separation agreements’.’, the only significant difference between them and stipulations spread on the record is that the former, when in writing and subscribed and acknowledged in the form sufficient to entitle a deed to be recorded, serve as a basis for judgment of absolute divorce. (See Domestic Relations Law, § 170, subd [6].) For purposes of enforcing or superseding provisions as to maintenance pursuant to section 236 (part B, subd 9) of the Domestic Relations Law, however, there is no appreciable difference between them. (Cf. Bowmer v Bowmer, 50 NY2d 288, supra; Vranick v Vranick, 41 AD2d 663, supra.) Moreover, given the court’s new powers to set aside or suspend the maintenance provisions of the agreement, it would serve no useful purpose in terms of judicial economy or the rights of the parties to require defendant to seek entry of a judgment of divorce, only to have him immediately thereafter seek its modification and the attendant supersedure of the stipulation. Factual issues are presented here, however, requiring an evidentiary hearing. The issues to be determined on the hearing are:
(a) whether defendant has suffered a change in circumstance;
(b) whether, in light of that change, incorporating the maintenance provisions of the agreement into the judgment of divorce would be unconscionable or whether, because of a demonstrated extreme hardship to either party, those terms should be superseded for such period of time and under such circumstances as the court shall determine;
(c) whether plaintiff is entitled to a counsel fee.
Upon the filing of a note of issue and payment of the requisite fee, the clerk of Special Term, Part V, shall place this matter on the calendar at the earliest possible date.