■ S. DEAN BUSETTI, Appellant, v MARGUERITE BUSETTI, Respondent. — In a matrimonial action, the plaintiff husband appeals, as limited by his brief, from so much of an order of the Supreme Court, Westchester County (Kelly, J.), dated May 4, 1984, as (1) upon granting his motion to renew and reargue his motion for a downward modification of the maintenance provisions of a judgment of divorce between the parties and that branch of the defendant wife's cross motion which was for leave to enter a judgment for arrears in maintenance for the months of December 1983 to February 1984, which were determined by order dated March 14, 1984, adhered to the original determination, and (2) granted the wife's cross motion for leave to enter a judgment for arrears in maintenance for the month of March 1984.

Order reversed, insofar as appealed from, on the law, without costs or disbursements, those portions of the order dated March 14, 1984 as denied plaintiff's motion and granted the branch of defendant's cross motion for leave to enter judgment for arrears in maintenance vacated, and matter remitted to the Supreme Court, Westchester County, for a hearing in accordance herewith.

On November 23, 1981, plaintiff and defendant entered into a stipulation of settlement of this matrimonial action which was placed upon the record in open court and accepted under oath as to its terms by both parties. The stipulation provided, *inter alia,* that "Plaintiff shall pay to the defendant the sum of $125 per week maintenance for a period of five years commencing July 1, 1982, which obligation shall be absolute". The terms of the stipulation were incorporated into, but not merged with, the judgment of divorce, entered February 25, 1982. After almost two years had elapsed, plaintiff, appearing *pro se,* moved to modify the divorce judgment by reducing the maintenance payments, based upon a substantial change of financial circumstances. At the time the parties entered into the stipulation, plaintiff was earning over $35,000 a year and defendant was

unemployed. However, at the time of the application for a downward modification, plaintiff alleged that his income had been reduced to an estimated $15,000 a year due to an involuntary change of employment, whereas defendant had earned a master's degree and was employed full time at a salary equivalent to plaintiff's annual income.

Since the parties had stipulated that plaintiff's obligation to pay $125 per week maintenance for five years "shall be absolute", Special Term was of the opinion that modification was precluded. Therefore, by order dated March 14, 1984, Special Term, *inter alia,* denied plaintiff's motion for a downward modification of the sum awarded as maintenance and granted that branch of defendant's cross motion which sought the entry of a judgment against plaintiff for the sum of $724.98, representing arrears which had accrued from December 1983, through February 1984. Thereafter, plaintiff renewed his prior application for a downward modification and defendant cross-moved, *inter alia,* for the entry of a judgment against plaintiff for the sum of $241.66, which represented the balance of the maintenance payment due for March 1984. By order dated May 4, 1984, Special Term granted plaintiff's motion to renew and reargue and thereupon adhered to its prior determination of March 14, 1984 and granted defendant's cross motion.

Although the parties had used the term "absolute" to describe plaintiff's obligation to pay $125 per week maintenance for five years commencing July 1, 1982, Special Term had the statutory power to modify the divorce judgment and to supersede the maintenance terms of the stipulation, which had survived the decree. Domestic Relations Law § 236 (B) (9) (b) provides, in pertinent part, that: "Upon application by either party, the court may annul or modify any prior order or decree as to maintenance or child support, upon a showing of the recipient's inability to be self-supporting or a substantial change in circumstance, including financial hardship. *Where, after the effective date of this part [July 19, 1980], a separation agreement remains in force no modification of a prior order or decree incorporating the terms of said agreement shall be made as to maintenance without a showing of extreme hardship on either party, in which event the decree or order as modified shall supersede the terms of the prior agreement and decree for such period of time and under such circumstances as the court shall determine* * * * Any * * * arrears accrued prior to the making of such application shall not be subject to modification or annulment unless the defaulting party shows good cause for failure to make application for relief from the judgment or order directing such payment prior to the

accrual of such arrears * * * The provisions of this subdivision shall not apply to a separation agreement made prior to the effective date of this part" (emphasis supplied). The stipulation of settlement in the instant case suffices as a separation agreement within the meaning of this provision (*see, Harrington v Harrington,* 103 AD2d 356; *Mutinelli v Mutinelli,* 114 Misc 2d 511).

This provision has expanded the court's statutory powers to include the ability to "supersede" (meaning to set aside or suspend, *see,* Black's Law Dictionary 1607 [4th ed]) the maintenance provisions of a separation agreement entered into on or after July 19, 1980 (*see, Pintus v Pintus,* 104 AD2d 866; *Mutinelli v Mutinelli, supra;* Foster, A Practical Guide to the New York Equitable Distribution Divorce Law, at 69-72; 11C Zett-Kaufman-Kraut, NY Civ Prac, ch 73; *see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:28, 1983-1984 Pocket Part, pp 171-172). These new powers "mark a significant departure from the long-established matrimonial practice, which had recognized the independant viability of all terms of a surviving separation agreement, despite court modifications of directives, incorporated from such agreements" (11C Zett-Kaufman-Kraut, NY Civ Prac at 73-12; *Mutinelli v Mutinelli, supra*). Thus, Domestic Relations Law § 236 (B) (9) (b) purports to allow the court to, in effect, suspend the separation agreement for as long as necessary and to what extent necessary and, thus, precludes the party who is adversely affected by the modification from bringing a contract claim to recover the difference between the amount agreed to and the amount as modified (*see, Tuckman v Tuckman,* 112 Misc 2d 803; Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:28, 1983-1984 Pocket Part, pp 171-172).[*]

Since Special Term has the statutory power to modify a judgment of divorce which incorporated the maintenance terms of a subsisting stipulation of settlement, the matter is remitted for a hearing and determination of (1) whether there has been a substantial change in circumstances, (2) if so, whether the plaintiff husband made a showing of extreme hardship warranting modification of the judgment of divorce and supersedure of

---

[*] There is some question as to whether this is constitutional. In *Kleila v Kleila* (50 NY2d 277, 283-284), decided only some two months before the effective date of the Equitable Distribution Law (L 1980, ch 281), the Court of Appeals indicated that "any attempt to confer upon a court of any jurisdiction within the United States broad powers to modify the terms of a separation agreement might well run afoul of constitutional limitations upon the State's power to tamper with vested contractual rights". The issue has not been raised in this appeal.

the maintenance terms of the prior stipulation for such period of time and under such circumstances as the court shall determine, and (3) whether the plaintiff has shown good cause for his failure to make application for relief from the judgment directing payment of maintenance prior to the accrual of arrears. Thompson, J. P., Bracken, Brown and Rubin, JJ., concur.